UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN COLANGELO,<br>*Plaintiff*,<br><br>v.<br><br>LESLEE HILL, ROBERT SKINNER,<br>CHRISTOPHER ARCIERO, BETH<br>KANDRYSAWTZ, ROBERT BESSEL,<br>*Defendants*. | No. 3:21-cv-00260 (KAD)<br><br><br><br>September 2, 2021 |

**MEMORANDUM OF DECISION RE:
DEFENDANTS' MOTION TO DISMISS (ECF NO. 12)**

Kari A. Dooley, United States District Judge:

This action arises from an internal investigation conducted by the Canton Police Department (the "Canton PD," or the "Department") in 2018, which led to Plaintiff John Colangelo's ("Colangelo" or the "Plaintiff") three-day suspension from his duties as a police officer. Colangelo brings claims pursuant to 42 U.S.C. § 1983 against Leslee Hill ("Hill"), who served as the Canton First Selectwoman from 2015 to 2018, Robert Skinner ("Skinner"), Canton's Chief Administrative Officer, Christopher Arciero ("Arciero"), Chief of the Canton PD, Beth Kandrysawtz, the First Selectwoman from 2018 to 2019, and Robert Bessel, the Town's current First Selectman (collectively, the "Defendants"). Specifically, Plaintiff brings both procedural due process and equal protection claims. Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's complaint in its entirety for a number of reasons, including that the claims are barred either by controlling Supreme Court precedent, or alternatively, the doctrine of *res judicata* in light of the Plaintiff's filing of a prior action against these same five Defendants in the

1

Connecticut Superior Court. The Court held oral argument on August 26, 2021 and has considered the memoranda and exhibits filed by the parties. (*See* ECF Nos. 12-1–12-6, 24–26.) For the reasons that follow, the motion to dismiss is GRANTED.

**Standard of Review**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*. "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

**Background and Allegations**

The following allegations are taken from the Plaintiff's complaint and are accepted as true for purposes of the instant motion. The Court has also considered documents incorporated in the complaint and materials of which judicial notice may be taken.

Colangelo was a detective with the Canton PD at all times relevant to his complaint. In September 2017 Colangelo obtained a warrant to arrest Nicole Chase ("Chase") for making a false statement in a written sexual assault complaint that she had filed with the Department against her employer, Calvin Nodine and Nodine's Smokehouse, Inc. (Compl. ¶¶ 16–18, ECF No. 1.) The criminal case against Chase was ultimately dismissed and she then filed a lawsuit, which was removed to federal court and remains pending, in which she alleges, *inter alia*, that the Canton PD failed to investigate adequately her allegations of sexual assault and that the warrant for her arrest was obtained with false and distorted evidence. (*Id.* ¶¶ 18–21; *see* Second Am. Compl., *Chase v. Nodine's Smokehouse, Inc. et al*, No. 3:18-cv-00683 (VLB), ECF No. 116 (D. Conn. June 19, 2019).) On April 25, 2018, Hill and Skinner directed Chief Arciero to open an internal affairs ("IA") investigation into the conduct of certain Canton PD officers, who were named as co-defendants in Chase's civil suit, in connection with Chase's arrest. (Compl. ¶ 27.) The investigation culminated in a report authored by Arciero and dated April 2, 2019, which is attached as Exhibit 1 to Defendants' motion to dismiss. (ECF No. 12-2.) Following the IA investigation and report, Colangelo received a *Loudermill* notice from Skinner dated August 8, 2019, which indicated that the Canton PD "was 'considering' 'possible significant discipline as a result of'" Arciero's investigation. (Compl. ¶ 48.) On September 24, 2019, Colangelo received a follow-up letter informing him that he was being suspended for three days, for reasons that included his

failure to communicate with Chase regarding the disposition of her sexual assault case. (*Id.* ¶¶ 61–62.)

Colangelo alleges that Skinner wanted to insulate the Town from another discrimination claim after the Town settled a sexual harassment case in which Skinner was the named respondent and argues that this rendered Skinner conflicted in connection with these events. (*Id.* ¶ 28.) Colangelo also maintains that Arciero had a conflict of interest in conducting the IA investigation due to his own involvement as a defendant in Chase's civil suit and that his role in the investigation violated Department policies, including its ethics canon. (*Id.* ¶¶ 23, 60.) Plaintiff additionally takes issue with Arciero's revisions to the Department's General Order 6.6 concerning sexual assault investigations while the IA investigation was ongoing, to include the addition of a sexual assault manual for interviewing victims that was not in effect at the time Chase made her complaint. (*Id.* ¶¶ 33–44.) Colangelo also criticizes Arciero for determining that certain of the Department's policies regarding sexual assault investigations needed revision, while allegedly finding that the policies that implicated Arciero's own conduct were sufficient. (*See, e.g.*, Compl. ¶¶ 51–52, 57.) He alleges that Arciero used "Colangelo as a scapegoat when his conduct and actions were defensible, reasonable, and well-within his discretion but perhaps not popular at the peak of the #metoo movement." (*Id.* ¶ 59.) He also challenges the Town's failure to retain separate counsel for Colangelo in Chase's civil suit so that he could argue that Arciero and the Town of Canton could be held liable under a *Monell* theory of liability (*id.* ¶ 67)—a proposition which Judge Bryant, who is presiding over that case, rejected. *See Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 110–11 (D. Conn. 2019).

Based on the foregoing Colangelo brings claims against all Defendants pursuant to 42 U.S.C. § 1983 for violating his right to procedural due process by allegedly conducting a tainted

investigation and disciplining him without cause (Count One), and for violating his right to equal protection of the law by allegedly treating him differently from others similarly situated without rational basis (Count Two). He also asserted a common law claim for interference with business relationships but indicated that he is abandoning that claim in his opposition to the motion to dismiss.[1]  (*See* Pl.'s Mem. at 7 n.4.)

On June 10, 2020, Colangelo filed an action in the Superior Court against these same five Defendants in which he asserted claims for negligent infliction of emotional stress ("NIED") and defamation in connection with the IA investigation and his suspension from the Canton PD.  (*See* State Court Compl., Defs.' Ex. 3, ECF No. 12-4.)  Defendants moved to strike both claims and at oral argument Colangelo conceded that the defamation count needed to be repleaded.  (*See* Order Re: Motion to Strike, Defs.' Ex. 2 and 4, ECF Nos. 12-3, 12-5.)  The Superior Court granted the motion to strike on the grounds that under Connecticut Supreme Court precedent, a claim for NIED in the employment context may only be premised on a defendant's unreasonable conduct in the termination process, and Colangelo remained an employee of the Canton PD.  (*Id.* (citing *Perodeau v. Hartford*, 259 Conn. 729, 792 A.2d 752 (2002)).)  Colangelo did not object to Defendants' motion for judgment, which the Superior Court granted on January 23, 2021.  (Defs.' Ex. 5, ECF No. 12-6.)  This lawsuit followed on March 1, 2021.

**Discussion**

Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata* and that he has failed to state a cognizable due process or equal protection claim.  Defendants also argue that Colangelo has failed to allege that they were personally involved in any of the purported

---

[1] The tortious interference claim was based on Colangelo's allegations that he began searching for post-retirement employment in February 2018, that Defendants knew he was searching for employment when they opened the IA investigation, and that the inordinate length of the investigation prevented him from procuring such employment during the nearly seventeen months that it remained pending.  (Compl. ¶¶ 86–96.)

constitutional violations (save for Skinner), and that they are entitled to qualified immunity. The Court does not address these latter two bases for dismissal in light of the Court's conclusions as set forth below.

The Court finds as an initial matter that the Plaintiff's equal protection claim, which is based on a "class of one" theory of equal protection, is undoubtedly precluded by the Supreme Court's decision in *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). In a "class of one" claim, "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*). In *Olech*, the Supreme Court held that the plaintiff's allegations that her municipality had required her to obtain a 33-foot easement to connect her property to the public water supply while requiring only 15-foot easements for similarly situated property owners stated a viable equal protection claim. *See id.* at 565. In *Engquist*, however, the Supreme Court explained that "the government as employer . . . has far broader powers than does the government as sovereign," and that judicial review of government employment decisions implicates different principles than those that animate review of the constitutionality of legislative and regulatory actions. *See* 553 U.S. at 598–99 (quotation marks and citation omitted). The Court further explained that given the inherently discretionary and individualized nature of the decision making at issue, "treating seemingly similarly situated individuals differently in the employment context is par for the course." *Id.* at 604. Accordingly, the Supreme Court held that "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context." *Id.* at 605; *see also, e.g.*, *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140

(2d Cir. 2010) (explaining that "[t]he Supreme Court's decision in *Engquist* . . . eliminated class-of-one claims for government employees.").

Colangelo argues that *Engquist* does not apply to public employees protected by a "just cause" provision for discipline pursuant to a collective bargaining agreement. However he cites no authority for this position, which would largely eviscerate *Engquist's* holding due to the pervasiveness of such agreements in the public employment sector. Nor did his counsel seek to defend the merits of the equal protection claim when confronted with this Court's view at oral argument that the claim appears barred under *Engquist*. The equal protection claim must therefore be dismissed. *See, e.g.*, *Gentile v. Nulty*, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) (explaining that "where plaintiff was a public employee challenging employment decisions, *Engquist* controls," in case brought by former police officer against the Town of Orangetown, New York contesting, *inter alia*, the termination of his employment).

As for Colangelo's procedural due process claim, the Court need not decide whether it is plausibly alleged, because the Court agrees with Defendants that the claim is barred by the doctrine of *res judicata*.

"In evaluating the *res judicata* effects of a previous state court judgment, federal courts apply that state's rule of law as to *res judicata*." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 255 (D. Conn. 2017). Under Connecticut law, *res judicata*, also known as "claim preclusion," "provides that a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them on the same claim." *Girolametti v. Michael Horton Assocs., Inc.*, 332 Conn. 67, 75, 208 A.3d 1223 (2019) (alterations and citation omitted). The purposes of the doctrine "are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent

7

judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 601, 922 A.2d 1073 (2007) (citation omitted).  "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." *Id.* at 601–02 (quotation marks and citation omitted).

"In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Girolametti*, 332 Conn. at 75 (quotation marks and citation omitted).  "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." *Powell*, 282 Conn. at 607 (quotation marks and citation omitted).

Here, the first two elements are not in dispute.  The judgment issued following the granting of the Defendants' motion to strike is "considered a final judgment on the merits," *Santorso v. Bristol Hosp.*, 308 Conn. 338, 353, 63 A.3d 940 (2013), and "there is no doubt that the Connecticut Superior Court was a court of competent jurisdiction." *Powell v. Ocwen Loan Servicing, LLC*, No. 3:18-CV-01879 (JAM), 2019 WL 3412174, at *4 (D. Conn. July 29, 2019), *aff'd*, 840 F. App'x 610 (2d Cir. 2020).  Second, the parties to the prior state court action and the instant action are identical.

As for the third factor, "State courts have concurrent jurisdiction with federal courts over § 1983 claims," *Zizka v. Water Pollution Control Auth. of Town of Windham*, 195 Conn. 682, 687, 490 A.2d 509 (1985), and Defendants thus argue that Colangelo had an adequate opportunity to assert his Section 1983 claims against Defendants in his state court suit. Colangelo responds that he did not have a full and fair opportunity to litigate his equal protection and due process claims in the Superior Court because he needed to bring his state law claims within two years of the inception of the IA investigation—or by April 26, 2020[2]—and at the time he did not yet have the records that would sustain the probable cause needed to bring his constitutional claims. He has attached the various Freedom of Information Act ("FOIA") requests he made to the Canton PD and the State of Connecticut following his September 2019 suspension. (*See* Pl's. Mem. at 1–3 and Supp. Exs. at ECF No. 25.) He has also included at the beginning of his exhibits a timeline of correspondence in this regard. According to Colangelo, he was not in possession of all responsive documents from the Canton PD from his February 2020 and January 2021 FOIA requests until February 12, 2021—less than three weeks before he filed the instant suit. (*See* ECF No. 25 at 4, 60.) However, at oral argument, these documents were identified as being relevant to the Plaintiff's equal protection claim (*see also id.* at 62), which the Court has already determined must be dismissed on other grounds.

Thus, notwithstanding the timing of the receipt of these documents, the Court agrees with the Defendants that the Plaintiff has not identified any material facts to support the procedural due process claim "that were unknown a[t] the time his first action was pending in state [court]." (Reply at 3.) Indeed, to the contrary, the procedural due process claim is based entirely on events

---

[2] Summonses issued on April 26, 2020 and the complaint was filed after service on June 10, 2020. The applicable statute of limitations is "two years from the date of the act complained of" for defamation, Conn. Gen. Stat. § 52-597, and "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered" for NIED. Conn. Gen. Stat. § 52-584.

which unfolded well before the filing of the state court action, events which also serve as the predicate for the state court claims.[3] Clearly then, the Plaintiff could have asserted the due process claim in the state court action. *See, e.g.*, *Ocwen Loan Servicing*, 2019 WL 3412174, at *5 ("Connecticut law is clear that *res judicata* does not turn on whether a party happens to have acquired additional evidence or developed new legal theories to support claims that could have been brought in the first instance in the prior action.").

Finally, as to the fourth element, Defendants argue that the cause of action is the same because both cases arose out of the IA investigation and the resulting three-day suspension from the Canton PD. The Connecticut Supreme Court has "adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata." *Fernandez v. Mac Motors, Inc.*, 205 Conn. App. 669, 676, --- A.3d ---- (Conn. App. Ct. 2021) (quoting *Powell*, 282 Conn. at 604).

> The claim that is extinguished by the judgment in the first action includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action.

*Id.* (quoting *Powell*, 282 Conn. at 604) (alterations omitted). Here, a comparison of the two complaints confirms unequivocally that the instant suit arose out of the same transaction as that

---

[3] Colangelo also argues that whether or not he could have brought his federal constitutional claims prior to the dismissal of his state court suit presents "an issue of fact." (Pl.'s Mem. at 5.) However as noted above "[t]he defense of *res judicata* . . . may be raised on a Rule 12(b)(6) motion to dismiss if 'all relevant facts are shown by the court's own records,'" *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (quoting *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003)), and Colangelo does not explain how discovery would shed any light on the question of whether he had the opportunity to litigate fully his constitutional claims in the context of the state court proceeding.

which formed the basis of the state court litigation. The state court complaint identifies the same Defendants, recites Hill's and Skinner's decision to task Arciero with investigating Chase's claims, describes Arciero's purported conflict of interest in doing so, and lodges Colangelo's same criticism of the Department process and final report which resulted in his three-day suspension. (*See, e.g.*, State Court Compl. ¶¶ 3–8, 16–21.)

Colangelo's arguments that his claims in the state court litigation are distinguishable because the NIED claim targeted the extended nature of the investigation and "[t]he defamation claim was limited to correspondence and communications between Arciero and the state police about Plaintiff on April 25, 2018" (Pl.'s Mem. at 5), are not persuasive. First, he does not cite any case law to support his position that this narrow view of his prior claims somehow renders them distinct from the claims brought herein for *res judicata* purposes. And as discussed above, it is well-settled that *res judicata* is applicable when the claims on both actions "grew out of the same transaction or nucleus of facts," *Powell*, 282 Conn. at 608, notwithstanding the inclusion of additional legal theories or even new factual allegations in the later-filed complaint, *see id.* at 607–08.[4]

Finally, the Court rejects the Plaintiff's argument that this Court should decline to apply *res judicata* on public policy grounds. It is true that the Connecticut Supreme Court has recognized "that application of the doctrine can yield harsh results, especially in the context of claims that were not actually litigated and parties that were not actually involved in the prior action." *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 158, 129 A.3d 677 (2016). "The decision of whether res judicata should bar such claims should be based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close

---

[4] Nor does the Court agree that a fair reading of the complaint in the state court action reveals so narrow a basis upon which the NIED claim was predicated.

11

. . . and the competing interest of the plaintiff in the vindication of a just claim." *Id.* (quotation marks and citation omitted). However, Colangelo does not identify any specific public policy that is implicated here as a basis for defeating the application of *res judicata* to his claims. To the contrary, application of the doctrine serves precisely the goals for which it was established. Having already successfully defended Colangelo's state law claims, the Defendants have a concrete interest in the finality of the state court judgment and a compelling interest in avoiding repetitive litigation and its commensurate costs. And although Colangelo seeks vindication of his claims, he clearly could have brought his due process claim in the state court. As discussed above, the due process claim is brought against the same Defendants and is predicated on the same series of events which gave rise to his state law claims.

**Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss is granted and the Defendants' motion to stay depositions, made on the record during the August 26, 2021 hearing (ECF No. 29), is accordingly denied as moot. The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of September 2021.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE